# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### April 22, 2003 Session

## STATE OF TENNESSEE v. MELISSA A. MELLINGER

**Direct Appeal from the Criminal Court for Wilson County**
**Nos. 00-1385, 00-1386    John D. Wootten, Jr., Judge**

———————

**No. M2002-01029-CCA-R3-CD - Filed December 10, 2003**

———————

The appellant, Melissa A. Mellinger, was convicted by a jury in the Wilson County Criminal Court of two counts of first offense driving under the influence (DUI), Class A misdemeanors. The trial court merged the convictions, imposed a three hundred fifty dollar ($350) fine, and sentenced the appellant to eleven months and twenty-nine days to be suspended upon serving two hundred seventy-three (273) days in the county jail. The trial court also suspended the appellant's driver's license for one year. On appeal, the appellant argues that the sentence imposed by the trial court was excessive. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA McGEE OGLE, J., delivered the opinion of the court, in which JOE G. RILEY and JAMES CURWOOD WITT, JR., JJ., joined.

Lance B. Mayes and M. Don Himmelberg, Nashville, Tennessee, for the appellant, Melissa A. Mellinger.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Howard Lee Chambers, District Attorney General Pro Tem; and Jerry D. Hunt, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

On June 13, 2000, the Wilson County Grand Jury returned an indictment charging the appellant with two counts of vehicular assault. At trial, Chisa Tipton, who was sixteen at the time of the offense, testified that on February 28, 2000, the nineteen-year-old appellant asked her if she would like to accompany her to a party in Lebanon, Tennessee. Tipton responded that she would like to go to the party and the girls left around 6:00 p.m. that evening. On the way to the party, the appellant stopped at a liquor store in Nashville and paid a man twenty dollars to buy her a bottle of

gin. After the man purchased the bottle of gin, the appellant and Tipton proceeded to the party. When they arrived at the party, the appellant took the bottle of gin and went into a room with one of her friends. Tipton testified that when the appellant entered the room, the bottle of gin was full, but when the appellant exited the room thirty minutes later, the bottle was no longer full. Shortly thereafter, the appellant and Tipton left the party.

Tipton testified that on the way home from the party, the appellant stopped at a Krystal's Restaurant and purchased a large soft drink to which she added gin. Thereafter, the appellant became lost and decided to stop and ask for directions. After stopping at a gas station, the appellant pulled onto Highway 70. At trial, Tipton related that there was "a lot of traffic on the road." Tipton testified that she was also concerned because the appellant was acting "a little bit drunk" and driving at speeds of ninety to one hundred miles per hour.

Tipton testified that while driving on Highway 70, the appellant pulled into the "oncoming traffic lane." Tipton stated that she saw "cars . . . coming right towards us and I blacked out." When she regained consciousness, Tipton got out of the appellant's vehicle, not realizing she had been injured. Tipton observed that the front sections of the appellant's vehicle and another vehicle were "smashed" and the appellant and the other driver were trapped inside their vehicles. Thereafter, "rescue" arrived and transported Tipton to the hospital. Tipton sustained lacerations to both legs, which lacerations required stitches.

Margaret Partee was the driver of the vehicle struck by the appellant's vehicle. At trial, Partee testified that her only recollection of the collision was that at approximately 7:00 p.m. on February 28, 2000, she was driving on Highway 70 when she saw "two headlights coming at [her] in [her] lane of traffic." As a result of her collision with the appellant's vehicle, Partee suffered numerous injuries. Both of her legs were placed in casts up to her knees, she suffered lacerations across both knees which required stitches, her left heel had to be completely reconstructed, and she had to have a long rod placed in her right thigh. As a result of these injuries, Partee was temporarily disabled. Following a five week stay in the hospital, Partee had to live with her daughter for two months, after which she was able to return to her own home. However, because Partee was confined to a wheelchair, a friend had to move into her home for several months to care for her. Moreover, because Partee was unable to return to work for a long period of time, the law firm she worked for was forced to hire someone else. Although the firm offered her a "secondary job," Partee retired shortly after returning to work. Partee testified at trial, "I'm not 100% normal yet and possibly never will be."

At trial, Lebanon Police Officer Michael Wentzell testified that on February 28, 2000, he responded to a call regarding a two car collision on Highway 70. Upon arrival, Officer Wentzell observed the two vehicles, both of which had sustained substantial damage. Both Partee and the appellant were trapped in the driver's seat of their vehicle. According to Officer Wentzell, the appellant was "screaming and yelling" and appeared to be in a great deal of pain. Officer Wentzell related that he smelled alcohol on her breath. Officer Wentzell testified that when he was clearing

the scene, he discovered a bottle of Seagram's gin between the console and the driver's seat of the appellant's vehicle.

Tim Crabtree, an emergency medical technician, responded to the collision and treated the appellant at the scene. He testified at trial that the appellant had "a fruity odor about her breath." Crabtree related that a fruity odor of the breath indicated the presence of alcohol. Crabtree further stated that the appellant's speech was slurred and she was combative.

At trial, Nouri Raaipour, a medical technician in the laboratory at Vanderbilt Hospital, testified that on February 28, 2000, he received a specimen of blood with the appellant's name on it. Raaipour testified that he analyzed the blood in accordance with hospital procedure. On cross-examination, Raaipour acknowledged that he had not seen the blood drawn from the appellant. Moreover, neither the police nor the Tennessee Bureau of Investigations had requested that he preserve the sample of blood.

Dr. Steven White treated the appellant upon her arrival at Vanderbilt University Medical Center. Dr. White testified that the appellant "was brought in by helicopter. . . . And she was combative and profane. And she appeared to be intoxicated." Although Dr. White could not recall who took the appellant's blood or how the blood was drawn, he testified that he did, in fact, "order[] a blood sample to be analyzed for alcohol content." Dr. White related that pursuant to protocol, numerous tests were conducted on the appellant's blood, including toxicology screens and tests to determine blood alcohol content. Dr. White testified that the results returned from the laboratory established that the appellant had a blood alcohol content of "295 milligrams per deciliter." Regarding the extent of the appellant's intoxication, Dr. White explained,

> I would not [allow a patient] to leave an emergency room with .295.
> If they were driving they would be restrained and kept from leaving.
> I would immediately report it to the police.

At the conclusion of the proof, a jury convicted the appellant of two counts of the lesser-included offense of driving under the influence, first offense. The trial court subsequently held a sentencing hearing. At the conclusion of the sentencing hearing, the trial court merged the convictions, imposed a three hundred fifty dollar ($350) fine, and sentenced the appellant to eleven months and twenty-nine days to be suspended upon serving two hundred seventy-three (273) days in the county jail.[1] The trial court also suspended the appellant's driver's license for one year. The appellant timely appealed.

---

[1] We note that the requirement that the appellant serve two hundred seventy-three (273) days in the county jail does not bar the appellant from earning good conduct credits towards the jail time. State v. Clark, 67 S.W.3d 73, 78 (Tenn. Crim. App. 2001).

## II. Analysis

On appeal, the appellant argues that the sentence imposed by the trial court was excessive. Specifically, the appellant contends that "the nature of [her] conduct did not warrant the severity of the punishment." The appellant further contends that the trial court misapplied the enhancement factors used to increase the percentage of her sentence to be served in confinement.

When an appellant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). Generally, the presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). However, the trial court has more flexibility in misdemeanor sentencing than in felony sentencing. State v. Johnson, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999) (citing State v. Troutman, 979 S.W.2d 271, 273 (Tenn. 1998)). In misdemeanor sentencing, the "trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute." Troutman, 979 S.W.2d at 274. The burden of showing that a sentence was improper is on the appellant. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302(b) (Supp. 2002), which provides in pertinent part that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. See also State v. Palmer, 902 S.W.2d 391, 392 (Tenn. 1995). Unlike a defendant convicted of a felony, a defendant convicted of a misdemeanor is not entitled to a presumptive minimum sentence. Johnson, 15 S.W.3d at 518 (citing State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997)). Rather, in sentencing the misdemeanor defendant, the trial court shall fix a percentage of the sentence that the defendant must serve in confinement before being eligible for release into rehabilitative programs.[2] Tenn. Code Ann. § 40-35-302(d). The trial court shall consider the sentencing principles and enhancement and mitigating factors in determining the percentage to be served and "shall not impose such percentages arbitrarily." Tenn. Code Ann. § 40-35-302(d); see also Troutman, 979 S.W.2d at 274.

In the instant case, the appellant was convicted of DUI, first offense, a Class A misdemeanor. Tenn. Code Ann. § 55-10-403(a)(1) (2000). A person convicted of a first offense DUI "shall be confined in the county jail or workhouse for not less than forty-eight (48) hours nor more than eleven (11) months and twenty-nine (29) days." Id. However, if the offender's blood alcohol content was greater than .20 percent, the minimum period of incarceration increases to seven days. Id.; see also State v. Helen Dixon Devers, No. M1999-00427-CCA-R3-CD, 2000 Tenn Crim. App. LEXIS 501, at *10 (Nashville, June 23, 2000). In effect, the DUI statute mandates a maximum sentence, with

---

[2] In the instant case, the percentage of service is seventy-five percent (75%), which coincides with the two hundred seventy-three (273) days of confinement ordered by the trial court.

the only function of the trial court being to determine what period above the minimum period of confinement is to be suspended. State v. Combs, 945 S.W.2d 770, 774 (Tenn. Crim. App. 1996). Moreover, unlike general misdemeanor sentencing in which a trial court is not permitted to require confinement in excess of seventy-five percent (75%), a trial court is authorized to require a DUI offender to serve one hundred percent (100%) of her sentence in confinement. State v. Allen Prentice Blye, No. E2001-01375-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 961, at \*28 (Knoxville, Nov. 1, 2002) (citing State v. Palmer, 902 S.W.2d 391, 393-94 (Tenn. 1995)).

In sentencing the appellant, the trial court considered the evidence presented at trial, the presentence report, the testimony of the witnesses at the sentencing hearing, and the arguments of counsel. At the sentencing hearing, Betsy Jakalski, the probation officer who prepared the appellant's presentence report, testified that the appellant had no prior convictions, but had previously been granted pretrial diversion in Davidson County on charges of vandalism, resisting stop and frisk, possession of alcohol by an individual under twenty-one years of age, public intoxication, and disorderly conduct. Jakalski testified that the appellant informed her that she had consumed alcohol on few occasions and had been drunk only "a couple of times." Jakalski stated that since the presentence interview, the appellant had moved to Robertson County to live with her father. Jakalski further testified that the appellant had worked at the Old Country Buffet for four years, but had abandoned the job a week prior to the presentence interview.

Margaret Partee also testified at the sentencing hearing, reading her victim impact statement into the record. Partee's testimony regarding the injuries sustained as a result of the collision mirrored her testimony at trial, but in greater detail. She related that it took the rescue team two hours "to cut me out of my car." Partee further testified that before the accident she had visited her eighty-seven-year-old mother once a week, but after the accident she saw her mother only a few times before her death in December 2000. Partee explained that as a result of the collision, she had suffered a great deal of pain, had been unable to participate in many special events, including vacations, and had missed a significant amount of work prior to retirement. Moreover, she related that her "brand new 2000 car, that [she]'d had for barely a month was demolished." Partee further testified that the appellant had not apologized or expressed any remorse for her actions. Partee urged the trial court to impose "the maximum confinement time."

The appellant testified on her own behalf at the sentencing hearing, stating that at the time of the accident she was nineteen years old and did not have "a lot of experience with alcohol." She related that her criminal history consisted of one speeding ticket and the aforementioned pretrial diversion. The appellant testified that she was "sorry for what happened" and that she had not consumed alcohol since the accident. The appellant explained that at the time of the accident she was attending Volunteer State Community College, but she was forced to drop out as a result of her injuries. According to the appellant, she abandoned her job at the Old Country Buffet because she no longer owned a vehicle. The appellant testified that if the trial court did not sentence her to a period of confinement, she would return to work full-time and pursue her "marketing degree" at Volunteer State Community College.

Thereafter, the trial court questioned the appellant regarding the Davidson County charges for which she received pretrial diversion. The appellant conceded that she consumed beer while a minor, thus leading to the underlying public intoxication charge giving rise to pretrial diversion. The trial court noted that the appellant was placed on pretrial diversion in August of 1999. The trial court then noted that the appellant was indicted in the instant case in June 2000, less than a year after being placed on pretrial diversion. The appellant explained that her pretrial diversion was not revoked because the probation officer monitoring her diversion was not advised that she had been charged for the instant offenses. However, the appellant acknowledged that the probation officer had advised her that while on pretrial diversion she was not to violate the law. The appellant also conceded that she knew she was violating the law when, on the night of the instant offense, she asked another person to buy her a bottle of gin and drank the gin despite being underage.

The trial court correctly noted that, because the appellant's blood alcohol content was greater than .20 percent, the mandatory minimum period of confinement was seven days. See Tenn. Code Ann. 55-10-403(a)(1). The trial court then considered the enhancement and mitigating factors to determine the portion of the sentence the appellant should serve in confinement before being eligible for release on probation. The trial court applied the following enhancement factors:

> (1) The appellant has a previous history of criminal convictions or
> criminal behavior;
> (3) The offense involved more than one victim;
> (6) The personal injuries inflicted upon or the amount of damage to
> property sustained by the victim was particularly great;
> (10) The appellant had no hesitation about committing a crime when
> the risk to human life was high; and
> (16) The crime was committed under circumstances under which the
> potential for bodily injury to a victim was great.

Tenn. Code Ann. § 40-35-114 (1997).[3] Regarding mitigating factors, the trial court took into consideration the appellant's youth and the fact that the appellant made "some effort . . . to compensate the victim." See Tenn. Code Ann. § 40-35-113(5), (6) (1997).

On appeal, the appellant first asserts that the trial court erred in applying enhancement factor (1), i.e., the appellant has a previous history of criminal convictions or criminal behavior. Tenn. Code Ann. § 40-35-114(1) (1997). The appellant contends that "the State only had a charge in which the [appellant] . . . was granted pretrial diversion. There were no other charges on the [appellant's] record." However, we note that this court has previously concluded that the criminal acts for which a defendant receives diversion can be considered as prior criminal behavior under enhancement factor (1). State v. Kelley, 34 S.W.3d 471, 481 (Tenn. Crim. App. 2000). Here, the appellant conceded that she consumed beer while a minor, which led to the pretrial diversion. Accordingly,

_____

[3] We note that, beginning July 4, 2002, "the 2002 amendment [to Tennessee Code Annotated section 40-35-114] added present [enhancement factor] (1) and redesignated former (1) through (22) as present (2) through (23), respectively." Tenn. Code Ann. § 40-35-114, Amendments (Supp. 2002). However, for the purposes of this opinion, we will use the former designations applicable at the time of the appellant's sentencing.

the trial court was allowed to consider the charge for which the appellant received pretrial diversion when determining the amount of the appellant's sentence to be served in confinement.

Next, the appellant contends that the trial court erred in applying enhancement factor (3), i.e., the offense involved more than one victim. Tenn. Code Ann. § 40-35-114(3) (1997). On appeal, the appellant correctly asserts that enhancement factor (3) may not be applied to enhance a sentence where a defendant is separately convicted of the offenses committed against each victim. State v. Williamson, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995). In the instant case, the appellant was charged in a two count indictment with the vehicular assault of Margaret Partee and Chisa Tipton. However, the appellant was convicted of the lesser-included offense of DUI. Nevertheless, the jury's acquittal of vehicular assault does not preclude the trial court from applying this enhancement factor and concluding that the DUI offense led to injuries. See State v. Winfield, 23 S.W.3d 279, 284 (Tenn. 2000). This court has previously concluded that DUI is a crime lacking a *named* victim. State v. Brenda F. Jones, No. W2002-00751-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 660, at *14 (Jackson, July 29, 2003). Therefore, we conclude that the trial court correctly applied enhancement factor (3). As we have noted, both Partee and Tipton were injured as a result of the appellant's driving under the influence, and Partee's vehicle sustained excessive damage.

The appellant also challenges the trial court's application of enhancement factor (6), i.e., the personal injuries inflicted upon or the amount of damage to property sustained by the victim was particularly great. Tenn. Code Ann. § 40-35-114(6) (1997). Citing State v. Williamson, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995), the appellant contends that, "because the personal injuries suffered by the victim[s] were an element of the offense of vehicular assault, . . . enhancement factor [(6)] can not be applied." However, as previously noted, in the instant case the appellant was convicted of DUI, not vehicular assault. "Personal injury" is not an element of DUI. See Tenn. Code Ann. § 55-10-401 (2000). Based upon the testimony at trial and at sentencing regarding the destruction to Margaret Partee's new vehicle and the extensive injuries sustained by Partee and Chisa Tipton, we conclude that the trial court appropriately applied enhancement factor (6).

Next, the appellant contends that the trial court erred in applying enhancement factor (10), i.e., the appellant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114(10) (1997). Enhancement factor (10) may be applied where the appellant creates a high risk to the life of a person other than the victim. State v. Bingham, 910 S.W.2d 448, 452 (Tenn. Crim. App. 1995). However, proof must exist "that other persons or motorists were either in the vicinity or placed at risk by [the appellant's] conduct." State v. Janice Carol Biskner, No. E2000-01440-CCA-R3-CD, 2001 Tenn. Crim. App LEXIS 887, at **39-40 (Knoxville, Nov. 13, 2001). The appellant asserts that "[t]here was no testimony at trial which stated that the [appellant] endangered any other person on the roadway." We disagree. At trial, Chisa Tipton testified that she became concerned when the appellant pulled onto Highway 70 because there was "a lot of traffic on the road." Tipton further related that the appellant subsequently drove her vehicle into oncoming traffic. Based upon these facts, we conclude that the trial court properly applied enhancement factor (10).

Finally, the appellant contends that the trial court erred in applying enhancement factor (16), i.e., the crime was committed under circumstances under which the potential for bodily injury to a victim was great. Tenn. Code Ann. § 40-35-114(16) (1997). The appellant argues that "[s]ince serious bodily injury is an essential element of vehicular assault, enhancement factor (16) may not be applied." However, as previously noted, the appellant was convicted of DUI, not vehicular assault. See Tenn. Code Ann. § 55-10-401. This court has previously observed that, if supported by the facts and circumstances of the case, enhancement factor (16) may be applied to enhance a DUI sentence.[4] See State v. Terry L. Byington, No. 03C01-9711-CC-00488, 1998 Tenn. Crim. App. LEXIS 1162, at **9-10 (Knoxville, Nov. 12, 1998); State v. Virginia Ailene Gann, No. 01C01-9704-CC-00164, 1998 Tenn. Crim. App. LEXIS 581, at *21 (Nashville, May 27, 1998). Clearly, under the circumstances in the instant case, the potential for bodily injury was great. The appellant's conduct resulted in a head-on collision in which both the driver of the other vehicle and the passenger in the appellant's vehicle were seriously injured. Accordingly, we conclude that there was no error in the trial court's application of enhancement factor (16).

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the trial court

_____
NORMA McGEE OGLE, JUDGE

---

[4] This court has previously rejected "the proposition that driving under the influence . . . do[es] not cause or threaten serious bodily injury." Virginia Ailene Gann, 1998 Tenn. Crim. App. LEXIS 581, at *22.